IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| POPTECH, L.P., individually, on behalf of a class of others similarly situated, and derivatively on behalf of Stewardship Credit Arbitrage Fund, LLC | : : : : : | |
| *Plaintiff* | : : | |
| *v.* | : : : | CIVIL ACTION NO. _____ |
| STEWARDSHIP INVESTMENT ADVISORS, LLC, | : : : | JURY TRIAL DEMANDED |
| ACORN CAPITAL GROUP, LLC, | : : : | CLASS AND DERIVATIVE ACTION |
| MARLON QUAN, | : : | |
| GUSTAV E. ESCHER, III, | : : | |
| BENJAMIN ZUCKER, | : : | |
| PETER SCHAFFER, and | : : | |
| A LA VIELLE RUSSIE, INC., | : : | |
| *Defendants* | : : : | June 18, 2010 |
| and | : : | |
| STEWARDSHIP CREDIT ARBITRAGE FUND, LLC, | : : : | |
| *Nominal Defendant* | : | |

## COMPLAINT

### Introduction

1.     Plaintiff Poptech, L.P. ("plaintiff") brings this action:  (a) individually and on

behalf of the Class (defined below) of investors who purchased interests in defendant

Stewardship Credit Arbitrage Fund, LLC ("Stewardship Fund"), in violation, *inter alia,* of

federal and state statutory and common law, and/or were otherwise damaged as a result of

defendants' wrongdoing; and (b) derivatively, on behalf of the Stewardship Fund, to recover the damages sustained by the Stewardship Fund as a result of the mismanagement of the Stewardship Fund by the SCAF Defendants (as defined below), and as a result of the fraudulent or negligent misrepresentations and other wrongful conduct by the Appraiser Defendants (as defined below).

2.      The SCAF Defendants induced plaintiff and the members of the Class to invest millions of dollars in the Stewardship Fund by representing that they were expert and experienced in the development and structuring of complex and substantial financial transactions, and that they would cause the Stewardship Fund to use the funds invested by plaintiff and the Class to purchase a widely diversified portfolio including secured notes, investment-grade bonds, municipal bonds and other similar securities as described below. Instead, the SCAF Defendants recklessly invested the bulk of the Stewardship Fund's assets with Thomas Petters who is now serving a federal prison term for fraud, and his affiliates (Thomas Petters and his affiliates are hereinafter collectively referred to as "Petters"), and recklessly invested other funds in imprudent investments including loans that were based on hugely inflated, false and negligent appraisals by the Appraiser Defendants.

3.      The SCAF Defendants, in their role as fiduciaries, did not exercise any diligence whatever, much less due diligence, with respect to the funds which they caused the Stewardship Fund to invest with Petters, or with respect to other investments including those based on the false appraisals and other factors presently unknown to plaintiff. The SCAF Defendants also breached their contractual obligations owed to plaintiff and the members of the Class by their wrongful conduct.

2

4.     When the SCAF defendants' scheme began to fail, and the Stewardship Fund was no longer able to generate income at a sufficient rate to cover the "Class P" preferred return rate, the SCAF Defendants fraudulently induced investors like plaintiff, to exchange their "Class P" interests in the Stewardship Fund for non-preferred "Class A" interests. In effect, plaintiff and the other members of the Class who did so purchased "Class A" interests with their "Class P" interests.

5.     Plaintiff brings this action on behalf of itself and the Class to recover the damages that they have sustained as a result of the SCAF Defendants' fraudulent, manipulative and other improper conduct, and derivatively on behalf of the Stewardship Fund to recover the damages that it has sustained as a result of the SCAF Defendants' breach of their fiduciary and contractual duties, and the Appraiser Defendants' false, fraudulent and/or negligent appraisals, and other misconduct which aided and abetted the SCAF Defendants in their own breaches of fiduciary duties.

### Parties, Jurisdiction and Venue

6.     Plaintiff is a limited partnership, organized and existing under the laws of Delaware. Plaintiff's sole general partner, Poptech, LLC, is a limited liability company, organized and existing under the laws of Delaware with its principal place of business in Florida. As set forth in the accompanying certification and incorporated herein by reference, Plaintiff acquired interests in the Stewardship Fund during the Class Period (defined below) and has been damaged thereby.

7.     The Stewardship Fund is a nominal defendant with respect to the derivative claims asserted herein, which are brought for its benefit and on its behalf. The Stewardship Fund is a limited liability company organized and existing under the laws of Delaware with a principal place of business at 500 West Putnam Avenue, Greenwich, Connecticut. The Stewardship Fund

is controlled by defendants Stewardship Investment Advisors, LLC and Marlon Quan.  No claims for damages are asserted herein against the Stewardship Fund.

8.      Defendant Stewardship Investment Advisors, LLC ("Stewardship Advisors") is a limited liability company, organized and existing under the laws of Delaware with a principal place of business at 500 West Putnam Avenue, Greenwich, Connecticut.  Stewardship Advisors, which is controlled by defendant Marlon Quan, is the Managing Member of the Stewardship Fund.

9.      Defendant Acorn Capital Group, LLC ("Acorn"), is a limited liability company, organized and existing under the laws of Delaware with a principal place of business at 500 West Putnam Avenue, Greenwich, Connecticut, and is controlled by defendant Marlon Quan.

10.      On information and belief, Stewardship Advisors and Acorn have owners and management in common, operate under common control, are staffed by the same employees and operate out of the same office location.

11.      Defendant Marlon Quan ("Quan") is a citizen of Connecticut.  Quan is the founder, principal owner, and Chief Executive Officer of Acorn, and the Managing Member of Stewardship Advisors.  At all relevant times, Quan was a control person of the Stewardship Fund and the SCAF Defendants under and pursuant to Section 20 of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. §78t.

12.      As Managing Member of Stewardship Advisors, Quan administers all of the general business and affairs of both Stewardship Advisors and the Stewardship Fund.

13.      Defendant Gustav E. Escher, III ("Escher") is a citizen of New Jersey, and on information and belief, resides at 42 Governors Lane, Princeton, New Jersey.  Escher was designated by Quan as the so-called "Independent Manager" of the Stewardship Fund for the

purpose of evaluating transactions between Acorn and the Stewardship Fund. However, the designation of the Independent Manager was controlled by Quan. As a result of Quan's control of the selection of the Independent Manager and Escher's relationship with Quan, Escher failed to carry out his duties in a genuinely independent manner. Due to his relationship with Quan, Escher was not independent or disinterested with respect to Quan and the companies controlled by him and, indeed, upon information and belief, was at all relevant times, under defendant Quan's control with respect to the conduct described herein.

14. Defendant Benjamin Zucker ("Zucker") is a citizen of New York. Zucker has done business under the trade names "Precious Stones Company" and "Charles Zucker Cultured Pearl Corp.," but the legal status of these trade names or the entities if any which they represent is presently unknown to plaintiff, and plaintiff reserves the right to request that such entities be added as parties at such time as their nature can be identified.

15. Defendant Peter Schaffer ("Schaffer") is a citizen of New York.

16. Defendant A La Vielle Russie, Inc. ("ALVR") is a corporation with its principal place of business at 781 Fifth Avenue, New York, New York. ALVR's state of incorporation is presently unknown to plaintiff.

17. Defendants Quan, Stewardship Advisors, Acorn, and Escher are sometimes hereinafter collectively referred to as the "SCAF Defendants."

18. Defendants Zucker, Schaffer and ALVR are sometimes hereinafter collectively referred to as the "Appraiser Defendants."

19. This Court has jurisdiction over plaintiff's claims under 15 U.S.C. §78aa, 28 U.S.C. §§1331, 1332(a), 1332(d)(2) and 1367.

20. For purposes of jurisdiction under 28 U.S.C. §1332(d)(2):

(a)     the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs;

(b)     one or more members of the Class is a citizen of a state different from any defendant.

21.     Venue is proper pursuant to 15 U.S.C. §78aa because an act or transaction constituting the wrongful conduct occurred in this District.

22.     Venue is proper pursuant to 28 U.S.C. §1391(b) in that a substantial part of the events and omissions giving rise to the claim occurred in this District.

## Class Action Allegations

23.     Plaintiff brings Counts One through Six pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a proposed class (the "Class") which consists of plaintiff and all other persons or entities that purchased or otherwise acquired Class P or Class A interests in the Stewardship Fund during the Class Period, *i.e.,* between February 7, 2006 and October 7, 2008 inclusive.  The Class includes, without limitation, persons or entities who acquired Class P or Class A interests during the Class Period by whatever means including by conversion of Class P to Class A interests.  The Class does not include defendants, any members of the immediate family of any of the individual defendants, any entities in which any of the defendants have a controlling interest, the legal representative, heirs, successors, predecessors in interest, affiliates or assigns of any of the defendants, any person who participated with any of the defendants in carrying out any of the wrongful conduct described herein, and the Judge(s) to whom this case or any related case is assigned.  The precise definition and temporal parameters of the Class shall be determined upon completion of discovery with respect thereto.

24.     This action may properly be maintained as a class action in that:

(a)     During the Class Period, substantial numbers of persons or entities acquired interests in the Stewardship Fund.

(b)     The Class satisfies the requirements of Rule 23(a)(1), F.R.Civ.P. in that the members of the Class are located in many parts of the United States and are so numerous that joinder is impracticable.

(c)     The Class satisfies the requirements of Rule 23(a)(2), F.R.Civ.P. in that there are questions of law common to all of the members of the Class as further described in paragraph 24(h) below.

(d)     The Class satisfies the requirements of Rule 23(a)(3), F.R.Civ.P. in that plaintiff's claims are typical of the claims of the other members of the Class, and plaintiff and all members of the Class sustained damages as a result of the Defendants' wrongful conduct complained of herein.

(e)     The Class satisfies the requirements of Rule 23(a)(4), F.R.Civ.P. in that plaintiff is a representative party that will fairly and adequately protect the interests of the other members of the Class, and has no interests antagonistic to, or in conflict with, the Class it seeks to represent.

(f)     The Class satisfies the requirements of Rule 23(b)(1)(B), F.R.Civ.P. in that the prosecution of separate actions by individual members of the Class would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interest of the other members not parties or would substantially impair or impede their ability to protect their interests.

(g)     The Class satisfies the requirements of Rule 23(b)(3), F.R.Civ.P. in that:

(i)     the questions of law or fact common to members of the Class, as summarized in subparagraph 24(h) below, predominate over any questions affecting only individual members.

(ii)    a class action is superior to other available methods for adjudicating the controversy because the cost of prosecuting the litigation is greater than the damages suffered by all or most of the members of the Class, plaintiff has brought this action in an appropriate forum, and the management of this action as a class action will not present any unusual or undue difficulties.

(iii)   A related class action, *Quinn, et al. v. Stewardship Credit Arbitrage Fund, LLC, et al.,* No. HHD-CV09-4046467-S, is pending in the Superior Court of Connecticut, but notwithstanding the commencement of that action over one year ago, little progress has been made and discovery has not begun.

(h)     The questions of law or fact which are common to the Class include:

(i)     whether defendants violated the federal securities laws as alleged in this Complaint;

(ii)    whether the documents and other statements disseminated to the Class during the Class Period misrepresented material facts about the financial condition, business prospects, and investment objectives, strategies and methods employed or to be employed by the SCAF Defendants;

8

(iii)   whether the SCAF Defendants failed to correct previously issued statements that they knew to be false or they recklessly disregarded the truth or falsity of such statements;

(iv)   whether the SCAF Defendants failed to disclose material, adverse information at a time when they were in possession of such information;

(v)   whether Defendants acted with knowledge or reckless disregard for the truth in misrepresenting and omitting material facts;

(vi)   whether, during the Class Period, the stated values of the interests in the Stewardship Fund were artificially inflated due to the material misrepresentations and omissions complained of herein;

(vii)   whether the SCAF Defendants breached their fiduciary duties to the members of the Class, *inter alia,* by recklessly investing the Stewardship Fund's assets;

(viii)   whether the Appraiser Defendants conspired with the SCAF Defendants to conceal from the members of the Class the true value of the Esmerian and Vassal collateral described below, and the fact that Stewardship Advisors and Acorn had abandoned the Stewardship Fund's claimed investment objectives, strategies and methods;

(ix)   whether both the SCAF Defendants and the Appraiser Defendants participated in and pursued the common course of conduct complained of herein; and

(x)     whether the members of the Class have sustained damages and, if

so, what is the proper measure thereof.

(i)     Plaintiff has retained counsel competent and experienced in litigating

securities and other class actions.

### Derivative Action Allegations

25.     Plaintiff brings Counts Seven through Eleven derivatively pursuant to Rule 23.1

of the Federal Rules of Civil Procedure on behalf of the Stewardship Fund, to enforce the rights

of the Stewardship Fund to recover the damages that it has sustained as a result of Defendants'

conduct described herein.

26.     Plaintiff has verified this Complaint as required by Rule 23.1(b), F.R.Civ.P.

27.     The Stewardship Fund is a nominal defendant with respect to the derivative

claims asserted herein, which are brought for its benefit and on its behalf.

28.     Plaintiff is and was a member of and investor in the Stewardship Fund at the time

of the transactions complained of, as required by Rule 23.1(b)(1), F.R.Civ.P., and before the

defendants' wrongdoing described herein was disclosed.

29.     The action is not a collusive one to confer jurisdiction that the Court would

otherwise lack.

30.     Pre-suit demand upon the Stewardship Fund to bring this action would have been

be futile because the Stewardship Fund LLC Agreement vests sole and exclusive control in

defendant Stewardship Advisors which is, in turn, controlled by defendant Quan.  Quan and

Stewardship Advisors would not allow the Stewardship Fund to bring this action against

themselves or the other defendants.  Further, if the Stewardship Fund were to assert such claims

in litigation, it would effectively negate any officers and directors' liability insurance which may

be maintained by the Stewardship Fund.

31.    Defendants Quan and Stewardship Advisors could not have impartially considered a demand related to alleged practices that benefit Quan and Stewardship Advisors themselves and their affiliate Acorn at the expense of the Stewardship Fund.

32.    Defendants Quan and Stewardship Advisors benefited directly from the sale of interests in the Stewardship Fund to plaintiff and others which increased the assets of the Fund from which Quan and Stewardship received a so-called "Performance Allocation" share of the total capital appreciation.

### Allegations Applicable to All Claims

33.    All of the defendants herein owe duties to plaintiff, the Class and (with respect to plaintiff's derivative claims) the Stewardship Fund which are continuing in nature.  Thus, Quan and Stewardship Advisors have held their respective positions as the Managing Member of Stewardship Advisors, and the Managing Member of the Stewardship Fund, continuously since at least September 2004; Escher held his position as the Independent Manager of the Stewardship Fund since at least September 2004 and on information and belief through and including at least September 2007; Acorn, which was owned and controlled by Quan, acted continuously since at least September 2004 as the originator of most of the Stewardship Fund's investments, and was so designated in the various Private Placement Memoranda ("PPMs") described below through which plaintiff and the members of the Class purchased their interests in the Stewardship Fund; and the Appraiser Defendants provided so-called "appraisal" services to the Stewardship Fund on a continuing basis from at least December 2006 through December 2007.

34.    Beginning in September 2004, and continuing until a date unknown to plaintiff, the SCAF Defendants were soliciting investments in the Stewardship Fund including both "Class A" interests which received a return equal to a *pro rata* share of the net capital

appreciation, less the Managing Member's "Performance Allocation," and "Class P" or "preferred" interests which received a preferred return rate as further described below.

35.    In or about January 2005, plaintiff purchased so-called "preferred" or "Class P" Limited Liability Company interests in the Stewardship Fund for $1,500,000 pursuant to a Confidential Private Placement Memorandum (the "Class P PPM") dated September 1, 2004. The Class P PPM incorporates by reference the Confidential Private Placement Memorandum for Class A interests (the "Class A PPM") also dated September 1, 2004.  The Class P and Class A PPMs are sometimes hereinafter collectively referred to as the "September 2004 PPMs."

36.    Owners of Class P interests were entitled to receive a cumulative quarterly preferred return equal to the quarterly return of the 3-month U.S. Dollar London Interbank Offered Rate ("3-month LIBOR") plus 5.50 percent per annum, pursuant to the Stewardship Fund Limited Liability Company Agreement (the "Stewardship Fund LLC Agreement") including the Class P Amendment thereto.  The preferred return rate of 3-month LIBOR plus 5.50% is hereinafter referred to as the "initial Class P preferred return rate."

37.    Both Class P and Class A interests constitute investment contracts, and therefore "securities" within the meaning of the Section 3(a)(10) of the 1934 Act, 15 U.S.C. §78c(a)(10), in that they constitute investments in a common enterprise from which the interest owners were to receive profits solely from the efforts of the Managing Member.

38.    In the Class P PPM, defendants Quan and Stewardship Advisors represented that the investment objective of the Class P interests was to provide their owners on a quarterly basis with a return equal to the initial Class P preferred return rate.

39.    In the Class A PPM, which was incorporated by reference in the Class P PPM, and which therefore also related to the Class P interests, defendants Quan and Stewardship Advisors represented as follows:

> The Company will seek a high level of current income and capital appreciation while minimizing risk by (1) purchasing a broad range of secured high-yield short-term notes ("Short-Term Notes") from, or issued by, Acorn Capital Group, LLC ("Acorn"), a financing company, and other financing companies engaged in providing commercial financing generally on a transaction-by-transaction basis ("Financing Companies"), (2) investing in and trading (i) corporate bonds of insurers having generally an "A" or higher rating from a nationally recognized rating agency, (ii) government securities, including those issued by the U.S. Treasury, Fannie Mae, Ginnie Mae, the Federal Farm Credit Bank, and the Federal Home Loan Banks, and (iii) municipal securities issued by state and local governments, or with respect to specific projects or public facilities, and (3) investing in: repurchase agreements and guaranteed structured notes, deposits and certificates; performance return-linked warrants, options and notes; finance related private investment funds and other similar investments.  The Managing Member intends to invest available cash in short-term U.S. Treasury securities, high-grade interest bearing debt securities, money market instruments and one or more highly-liquid private placement funds that utilize various arbitrage strategies, which are intended to be market neutral.

> The Managing Member may employ leverage of up to 4 to 1 in implementing its Investment Objective and Strategies, but generally intends to employ lesser amounts of leverage. In addition, the Company may issue Class P Interests, which will have the effect of leveraging the return of the Interests.

Class A PPM at pages 1-2.

40.    Both the Class P PPM and the Class A PPM advised investors that there was no assurance that the "objectives" of the trading strategies and methods utilized by the Managing Member would be "met" or that such trading strategies and methods would be "profitable" or would "avoid losses."  However, neither the Class P PPM, nor the Class A PPM, advised plaintiff or the other members of the Class that the trading strategies and methods described therein would be abandoned or never followed in the first place.

41.     On information and belief, the SCAF Defendants continued to sell Class A and Class P interests in the Stewardship Fund utilizing successive versions of the September 2004 PPMs that contained substantially similar disclosures concerning the trading strategies and methods employed and to be employed for the Stewardship Fund.  These successive versions are sometimes hereinafter collectively referred to as the "subsequent PPMs."

42.     On or about February 7, 2006, the SCAF Defendants sent a letter to the owners of Class P interests, including plaintiff, which stated that:

(a)     Due to "[e]conomic events over the past year," the "preferred return" rate for Class P would be changed effective May 1, 2006 from the initial Class P preferred return rate to a reduced rate equal to the 3-month LIBOR rate plus 4.00% per annum; and

(b)     Owners of Class P interests were requested either to "consent" to the change in the preferred return rate, or to convert their interests into Class A interests which did not have a preferred return rate, or to request withdrawal.

43.     Following plaintiff's receipt of the February 7, 2006 letter, and as a result thereof, plaintiff chose the proffered option to convert its Class P interests into, and therefore purchase Class A interests, and the conversion took place on or about May, 1, 2006.

44.     The statement that the "preferred return" rate for Class P interests was changed as a result of "[e]conomic events over the past year" was false.  The true reason that the "preferred return" rate for Class P interests was changed was that the SCAF Defendants knew that the assets of the Stewardship Fund had been invested in investments such as or similar to the SCAF Petters investments, Esmerian loans and Vassal loans (as defined below), as well as other equally imprudent investments, and were already under-performing or even in default.

45.     Neither the February 7, 2006 letter, nor any prior or subsequent communication, stated that the trading strategies and methods described in the September 2004 and subsequent PPMs had been abandoned.

46.     However, the subsequent disclosures by the SCAF Defendants concerning the investments held by the Stewardship Fund make it clear that the SCAF Defendants had never intended to follow the trading strategies and methods described in the September 2004 and subsequent PPMs.

47.     On or about February 14, 2006, the SCAF Defendants sent plaintiff and all other owners of interests in the Stewardship Fund, both Class A and Class P, an "investor's letter" reporting on activity during the month of December 2005 which stated, in part, that "[n]ew transactions added this month," *i.e.,* new loans in which the Stewardship Fund made investments, "include collateral of museum quality collectable antiquities."

48.     Neither the February 7, 2006 letter, nor any prior or subsequent communication, stated that the so-called "museum quality collectable antiquities" had not been properly appraised or valued on the basis of generally accepted standards such as comparable sales or auction prices, or that the true value of the collateral was only a tiny fraction of the so-called appraisals on which the SCAF Defendants purported to be relying.

**The SCAF Petters Investments**

49.     From on or about November, 2004, contrary to the investment objectives, strategies and methods described and promised in the September 2004 PPMs, the SCAF Defendants invested a high proportion of the Stewardship Fund's assets in loans to Petters (including both Thomas J. Petters and his affiliates as defined above).  These investments are hereinafter collectively referred to as the "SCAF Petters investments."

50.     According to information disclosed by Quan in an "Investor Update" dated October 17, 2008, the SCAF Petters investments amounted to 60 percent more of the Stewardship Fund's total portfolio by April 30, 2008.

51.     In the September 2004 and subsequent PPMs, the SCAF Defendants represented that their affiliate Acorn would follow procedures to assure that short-term notes like the SCAF Petters investments were supported by real assets and transactions.

52.     Contrary to the September 2004 and subsequent PPMs, no such procedures were carried out by Acorn or anyone else with respect to the SCAF Petters investments. The SCAF Defendants' failure to confirm and secure the underlying assets resulted in a catastrophic loss to the Stewardship Fund because the loans making up the SCAF Petters investments were part of a Ponzi scheme carried out by Petters. The Ponzi scheme carried out by Petters was based in substantial part on fictitious purchase orders and invoices showing sales of consumer electronic products to retailers such as Sam's Club, Costco and BJ's Wholesale Club.

53.     According to an Affidavit submitted by Special Agent Eileen Rice of the Federal Bureau of Investigation (the "Rice Affidavit"), one of Petters' co-conspirators, Vennes, stated in a voice recording made by a cooperating witness, "that if investors send auditors out to visit warehouses where the merchandise is located, . . . the scheme would implode." *See* Affidavit of Special Agent Eileen Rice, ¶15.c., sworn to on October 2, 2008 and filed in *United States v. Petters,* No. 08-CV-5348 (D.Minn.).

54.     The SCAF Defendants did not at any time take any steps to assure that the SCAF Petters investments were supported by real assets and transactions, not even the minimal steps outlined in the Rice Affidavit which, when finally carried out by the Federal Bureau of

Investigation, caused the Petters Ponzi scheme to "implode" just as Petters' confederate Vennes
had stated.

55.    The SCAF Defendants could not have invested a majority of the Stewardship

Fund's assets in the SCAF Petters investments if the defendants had been following the trading

strategies and methods described in the September 2004 and subsequent PPMs, or if the SCAF

Defendants had taken any steps to assure that the SCAF Petters investments were supported by

real assets and transactions.

56.    Losses to Acorn as a result of the Petters Ponzi scheme, including losses on behalf

of the Stewardship Fund, have been estimated by the Department of Justice at nearly $140

million, representing the second highest loss amount in the Petters fraud and nearly 6 percent of

the total. *See* Government's Final Proposed Restitution Order in *United States v. Petters,* Crim.

No. 08-364 (filed May 26, 2010).

57.    Because of the very limited assets that are expected to be recovered in the

proceedings against Petters, restitution would have been made for only a tiny percentage of those

losses even if the Court had approved the proposed Order.  On June 3, 2010, the United States

District Court for the District of Minnesota rejected the proposed restitution order for this very

reason, among others.  In the Court's words,

> The Government has made clear that "restitution payments will represent only a
> small fraction of the total restitution order," since the assets available for
> restitution are estimated to be worth approximately $10-20 million (out of more
> than $2 billion in restitution sought). . . .  In other words, restitution will, at best,
> result in the recovery of something less than a penny for each dollar of victim
> loss.  In assessing whether to decline to order restitution due to complexity or
> undue delay, the court must evaluate "the need to provide restitution to any
> victim." 18 U.S.C. § 3663A(c)(3)(B).  Here, the need for restitution is limited by
> its probable value, and the victims needing it most – unsophisticated individual
> investors who saw their life savings frittered away by the Defendant's fraud –
> likely would recover the smallest amounts, since the vast majority of losses were
> suffered by hedge funds and similar entities.

Order in *United States v. Petters,* Crim. No. 08-364 (June 3, 2010) at pp. 8-9.

58.     Even if the SCAF Defendants are able to obtain compensation for part of the

losses on the SCAF Petters investments through other sources such as bankruptcy proceedings, it

is certain that they will be unable to obtain compensation for a significant portion of those losses.

### The Esmerian and Vassal Loans

59.     From on or about December 2005, contrary to the investment objectives,

strategies and methods described and promised in the September 2004 and subsequent PPMs, the

SCAF Defendants invested millions of dollars of the Stewardship Fund's funds in loans to Ralph

Esmerian ("Esmerian"), a now-insolvent jewelry dealer, and to Vassal Jewels LLC ("Vassal")

secured by so-called "museum quality collectable antiquities."  These loans are sometimes

hereinafter collectively referred to as the "Esmerian loans" and "Vassal loans," and the collateral

is sometimes hereinafter collectively referred to as the "Esmerian collateral" and "Vassal

collateral" respectively.

60.     Esmerian is now in bankruptcy as the result of an Involuntary Bankruptcy Petition

signed by Quan and filed on behalf of the Stewardship Fund on or about May 18, 2010.

61.     The SCAF Defendants accepted and valued the Esmerian collateral and Vassal

collateral solely on the basis of "appraisals" authored by the Appraiser Defendants.

62.     Asset Based Resource Group, LLC, a company subsequently hired by the SCAF

Defendants in an attempt to marshal and collect on the various collateral pledged as security to

the Stewardship Fund, retained Edward Lewand of Consultant Appraisal Service, Inc., to review

the so-called "appraisals" prepared by the Appraiser Defendants and to independently appraise

the Esmerian and Vassal collateral, and Mr. Lewand prepared two reports which described his

findings:  a report dated October 14, 2009 relating to the Esmerian collateral, and a report dated

November 15, 2009 relating to the Vassal collateral.

63.     According to Mr. Lewand's October 14, 2009 report, Zucker and Schaffer (on behalf of ALVR) placed a value of $41,175,000 and $39,400,000, respectively on the Esmerian collateral, but Mr. Lewand appraised the same Esmerian collateral at only between $1,254,000 and $1,630,000, or only about **4 percent of the values certified by the Appraiser Defendants**.

64.     According to Mr. Lewand's November 15, 2009 report, Zucker and Schaffer (on behalf of ALVR) placed a value of $42,500,000 and $46,100,000, respectively, on 22 lots of the Vassal collateral, but Mr. Lewand appraised the same 22 lots of the Vassal collateral at only between $191,000 and $293,000, or **less than 1 percent of the values certified by the Appraiser Defendants**.

65.     In his October 14, 2009 report, the SCAF Defendants' expert Mr. Lewand included the following comments about the deficiencies in the appraisals prepared by the Appraiser Defendants:

> In my experience, the sale of jewelry and antiquities that served as collateral for a defaulted loan generally involves a sale within a reasonably timely manner, which could be up to six months, at a well publicized auction. The value given to collateral at the time of the loan by an appraiser should be determined based upon the applicable "marketable cash value," which is the projected sales price of the items less all expenses of sale (fees, advertising, etc). **This type of appraisal should be based on comparable sales of items from prior sales and should reflect the net proceeds anticipated from a potential public sale of the collateral**. See Appraisal Principles and Procedures by Henry A. Babcock, FASA; see also Black's Law Dictionary "Liquidation - One Month Liquidation." This projected net sale value should take into account the historic change in market values over time. The Zucker and Schaffer Appraisal Reports were prepared for the purpose of [Ralph Esmerian, Inc.]'s use of the Collateral as security for a loan. Thus, **the values should have been based on auction results to ensure that the values are supported by actual prior sales of similar or comparable items** and provide evidence that the Collateral could be sold within a reasonable period of time to settle the debt. The Zucker Appraisal states that it is based on "dealer and auction values." The Shaffer Appraisal simply states that it represents "market values." The Second Zucker Appraisal states that it is being provided "in connection with a certain loan transaction." The Second Schaffer Appraisal also states that it is being provided "in connection with a certain loan transaction." Neither the Third Zucker Appraisal, nor the Third Schaffer Appraisal specify the

type or nature of the appraisal being given, but they were both provided in days prior to a loan by the addressee, Acorn Capital. None of the Zucker and Schaffer Reports state that they are based upon retail or other values. However, in this instance, **the Zucker and Schaffer Appraisal Reports are materially false irrespective of the type of valuation considered - auction or retail**. Moreover, none of the Zucker and Schaffer Reports provides a projected auction value based on prior sales data that was publicly available at the time.

After careful review of the Zucker and Schaffer Appraisal Reports and an analysis of the market for the items appraised therein, I found no evidence to support their appraised values. **The Zucker and Schaffer Appraisal Reports do not provide any support for their values and there do not appear to be any comparable sales to support them. It is my opinion that the Appraisals were prepared in a coordinated fashion based upon their remarkable consistency in values that are materially false.** Additionally, based upon the size of the discrepancies between true value and the figures set forth in the Zucker and Schaffer Appraisal Reports, it is my opinion that Zucker and Schaffer performed no independent research to substantiate their appraised values. This is apparent based on research of Sotheby's and Christie's Antiquity sales between 2004 and 2006, showing that no comparable items sold for anything close to the values set forth in the Zucker and Schaffer Reports. In my opinion, if Zucker and Schaffer had acted independently of each other and had done research in the appropriate markets for sales of similar items like reasonably competent appraisers, they would have discovered relevant comparable sales and provided far more accurate appraised values.

The industry standard for appraisals was the same in 2008 as it is today. It involves an analysis of comparative sales data by a qualified appraiser. **The Zucker and Schaffer Appraisal Reports fail to provide any background information sufficient to determine whether Zucker or Schaffer are qualified appraisers. Irrespective of their qualifications, neither Zucker, nor Schaffer properly supported their appraised values with valid research and comparable sales data**.

October 14, 2009 Lewand Report at pp. 3-4 (emphasis added). Similar comments appear in the

November 15, 2009 Lewand Report at pp. 3-4.

66.     Both the SCAF Defendants and the Appraiser Defendants knew or – for the

reasons stated by Mr. Lewand should have known – that the values for the Esmerian collateral

and Vassal collateral set forth in the "appraisals" prepared by the Appraiser Defendants were

materially false and misleading.

67.     The Appraiser Defendants made the false statements contained in their so-called "appraisals" with the intent either to deceive the SCAF Defendants, or pursuant to a conspiracy including Esmerian, Vassal Jewels LLC, Stewardship Advisors, and Acorn to conceal from the Stewardship Fund and its investors the true value of the Esmerian collateral and Vassal collateral and the fact that Stewardship Advisors and Acorn had abandoned the investment objectives, strategies and methods described and promised in the September 2004 and subsequent PPMs.

## COUNT ONE
### Plaintiff and the Class v. Quan and Stewardship Advisors

### Violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5 Thereunder

68.     Paragraphs 1 through 67 of this Complaint are incorporated herein by reference.

69.     Defendants Quan and Stewardship Advisors violated Section 10(b) of the Securities Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5, by making the false and misleading statements described above in paragraphs 38 through 47, 50, 51, 53 and 54, and/or by failing to correct these false statements when they were made despite having the knowledge, ability and opportunity to do so. These statements by Quan and Stewardship Advisors were materially false and misleading when issued because:  (a) Quan and Stewardship Advisors never intended to follow, and never did follow, the investment objectives, strategies and methods that they claimed to be following; (b) Quan and Stewardship Advisors instead, throughout the Class Period, invested the bulk of the Stewardship Fund's assets in the SCAF Petters investments, the Esmerian loans, the Vassal loans and other questionable investments; (c) Quan and Stewardship Advisors knew or should have known that Acorn was not following any of the claimed procedures to assure that investments such as the SCAF Petters investments were supported by real assets and transactions; and (d) Quan and Stewardship Advisors knew or should have known that the so-called appraisals of the Esmerian

collateral and Vassal collateral by the Appraiser Defendants were not supported by generally accepted measures of value such as comparable sales or auction prices.

70.     At all pertinent times, Quan and Stewardship Advisors acted with the requisite *scienter* when issuing these false and misleading statements because:  (a) they knew that they never intended to follow the investment objectives, strategies and methods that they claimed to be following; (b) they knew that they were not following the investment objectives, strategies and methods that they claimed to be following; (c) they knew that the bulk of the Stewardship Fund's assets had been invested instead in the SCAF Petters investments, Esmerian loans, Vassal loans and other questionable investments; (d) they knew or should have known that the investment of the bulk of the Stewardship Fund's assets in the SCAF Petters investments, Esmerian loans, Vassal loans and other questionable investments was inconsistent with the disclosed investment objectives, strategies and methods; (e) they knew that they had not taken any procedures to assure that the SCAF Petters investments were supported by real assets and transactions; (f) they knew or should have known that the so-called appraisals of the Esmerian collateral and Vassal collateral by the Appraiser Defendants were not supported by generally accepted measures of value such as comparable sales or auction prices; (g) they knew or should have known that the true value of the Esmerian collateral and Vassal collateral was only a tiny fraction of the Esmerian loans and Vassal loans.

71.     The facts alleged herein compel a strong inference that Quan and Stewardship Advisors made material false and misleading statements to the investing public with *scienter*, in that the SCAF Defendants knew or with severe recklessness disregarded that the statements issued or disseminated in the name of the Stewardship Fund were materially false and misleading; knew such that statements would be issued or disseminated to the members of the

Class; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements as primary violators of the federal securities laws, and at a time when they were control persons of the Stewardship Fund under and pursuant to Section 20 of the 1934 Act.

72.     As a result of the foregoing, the purportedly planned activities and investments of the Stewardship Fund were falsely represented and the stated values of interests in the Stewardship Fund (which were and are securities pursuant to Section 3(a)(10) of the 1934 Act) were artificially inflated during the Class Period.  In ignorance of the falsity of the reports and statements, and the deceptive and manipulative devices and contrivances employed by Quan and Stewardship Advisors, Plaintiff and the other members of the Class purchased interests in the Stewardship Fund during the Class Period on the basis of the reports, statements, announced investment strategies and stated values of the Stewardship Fund's assets which were artificially inflated as a result of Quan and Stewardship Advisors' false and misleading statements.

73.     Had Plaintiff and the other members of the Class known of the material adverse information, which Quan and Stewardship Advisors failed to disclose and/or misrepresented, they would not have purchased Stewardship Fund securities or would not have purchased them at the artificially inflated prices that they did.

74.     Quan's and Stewardship Advisors' dissemination of this false and misleading material information, and their failure to disclose material information that rendered their other statements false and misleading, served only to harm Plaintiff and the other members of the Class who purchased Stewardship Fund securities, in ignorance of the financial risk to them as a result of such false and misleading information.

75.     As a direct and proximate result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

76.     By reason of the foregoing, Quan and Stewardship Advisors have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder and are liable to Plaintiff and the other members of the Class for the substantial damages which they suffered in connection with their purchase of Stewardship Fund securities during the Class Period.

## COUNT TWO
### Plaintiff and the Class v. Quan

### Violation of Section 20(a) of the Securities Exchange Act

77.     Paragraphs 1 through 76 of this Complaint are incorporated herein by reference.

78.     Defendant Quan acted as a controlling person of the Stewardship Fund and Stewardship Advisors within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By reason of his position as founder, principal owner and Chief Executive Officer of Acorn, and the Managing Member of Stewardship Advisors, which in turn is the Managing Member of the Stewardship Fund, Quan had the power and authority to cause the Stewardship Fund to engage in the wrongful conduct complained of herein.  By reason of such conduct, Quan is liable pursuant to Section 20(a) of the 1934 Act.

## COUNT THREE
### Plaintiff and the Class v. Quan and Stewardship Advisors

### Violation of Connecticut Uniform Securities Act, C.G.S. §36b-29

79.     Paragraphs 1 through 78 of this Complaint are incorporated herein by reference.

80.     Defendants Quan and Stewardship Advisors violated Section 36b-29 of the Connecticut Uniform Securities Act, C.G.S. §36b-29, by making the false and misleading statements described above in paragraphs 38 through 47, 50, 51, 53 and 54, and/or by failing to correct these false statements when they were made despite having the knowledge, ability and

opportunity to do so. These statements by Quan and Stewardship Advisors were materially false and misleading when issued because: (a) Quan and Stewardship Advisors never intended to follow, and never did follow, the investment objectives, strategies and methods that they claimed to be following; (b) Quan and Stewardship Advisors instead, throughout the Class Period, invested the bulk of the Stewardship Fund's assets in the SCAF Petters investments, the Esmerian loans, the Vassal loans and other questionable investments; (c) Quan and Stewardship Advisors knew or should have known that Acorn was not following any of the claimed procedures to assure that investments such as the SCAF Petters investments were supported by real assets and transactions; and (d) Quan and Stewardship Advisors knew or should have known that the so-called appraisals of the Esmerian and Vassal collateral by the Appraiser Defendants were not supported by generally accepted measures of value such as comparable sales or auction prices.

81.    At all pertinent times, Quan and Stewardship Advisors acted with the requisite *scienter* when issuing these false and misleading statements or materially assisted in the offer and sale of securities by means of an untrue statement of material fact and omissions to state material facts because: (a) they knew that they never intended to follow the investment objectives, strategies and methods that they claimed to be following; (b) they knew that they were not following the investment objectives, strategies and methods that they claimed to be following; (c) they knew that the bulk of the Stewardship Fund's assets had been invested instead in the SCAF Petters investments and the Esmerian loans; (d) they knew or should have known that the investment of the bulk of the Stewardship Fund's assets in the SCAF Petters investments, Esmerian loans, Vassal loans and other questionable investments was inconsistent with the disclosed investment objectives, strategies and methods; (e) they knew that they had not

taken any procedures to assure that the SCAF Petters investments were supported by real assets and transactions; (f) they knew or should have known that the so-called appraisals of the Esmerian and Vassal collateral by the Appraiser Defendants were not supported by generally accepted measures of value such as comparable sales or auction prices; (g) they knew or should have known that the true value of the Esmerian and Vassal collateral was only a tiny fraction of the Esmerian and Vassal loans.

82.    The facts alleged herein compel a strong inference that Quan and Stewardship Advisors made material false and misleading statements to the investing public with *scienter*, or materially assisted in the offer and sale of securities by means of an untrue statement of material fact and omissions to state material facts, in that the SCAF Defendants knew or with severe recklessness disregarded that the public statements issued or disseminated in the name of the Stewardship Fund were materially false and misleading; knew such that statements would be issued or disseminated to the members of the Class; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements as primary violators of the Connecticut Uniform Securities Act.

83.    As a result of the foregoing, the purportedly planned activities and investments of the Stewardship Fund were falsely represented and the stated values of interests in the Stewardship Fund was artificially inflated during the Class Period.  In ignorance of the falsity of the reports and statements, and the deceptive and manipulative devices and contrivances employed by Quan and Stewardship Advisors, Plaintiff and the other members of the Class purchased interests in the Stewardship Fund during the Class Period on the basis of the reports, statements, announced investment strategies and stated values of the Stewardship Fund's assets

which were artificially inflated as a result of Quan and Stewardship Advisors' false and misleading statements.

84.    Had Plaintiff and the other members of the Class known of the material adverse information, which Quan and Stewardship Advisors failed to disclose and/or misrepresented, they would not have purchased Stewardship Fund securities or would not have purchased them at the artificially inflated prices that they did.

85.    Quan's and Stewardship Advisors' dissemination of this false and misleading material information, and their failure to disclose material information that rendered their other statements false and misleading, served only to harm Plaintiff and the other members of the Class who purchased Stewardship Fund securities, in ignorance of the financial risk to them as a result of such false and misleading information.

86.    As a direct and proximate result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

87.    By reason of the foregoing, Quan and Stewardship Advisors have violated Section 36b-29 of the Connecticut Uniform Securities Act and are liable to Plaintiff and the other members of the Class for the substantial damages which they suffered in connection with their purchase of Stewardship Fund securities during the Class Period.

## COUNT FOUR
### Plaintiff and the Class v. Acorn, Escher, Zucker, Schaffer and ALVR

### Aiding and Abetting Violations of Connecticut Uniform Securities Act

88.    Paragraphs 1 through 87 of this Complaint are incorporated herein by reference.

89.    As set forth above, Defendants Quan and Stewardship Advisors violated the Connecticut Uniform Securities Act.

90.     Defendants Acorn and Escher knowingly and substantially assisted Quan and Stewardship Advisers in their breach of the Connecticut Uniform Securities Act, in that they were aware or should have been aware of all the false statements and omissions committed by Stewardship Advisors and Quan, assisted in the creation and dissemination of these statements, or were knowingly blind to the statements and omissions, and took no action to prevent or correct the false statements and omissions.

91.     At all times, Acorn and Escher were aware or should have been aware of their roles in the securities fraud committed by Quan and Stewardship Advisers.

92.     The Appraiser Defendants knowingly and substantially assisted Quan and Stewardship Advisers in their breach of the Connecticut Uniform Securities Act, in that they were knowingly responsible for the fraudulent "appraisals" of the Esmerian and Vassal collateral and how such "appraisals" would be and were used, aware of all the false statements and omissions committed by Stewardship Advisors and Quan relating to the Esmerian and Vassal Loans and the valuation of the Esmerian and Vassal collateral, assisted in the creation and dissemination of these statements, or were knowingly blind to the statements and omissions, and took no action to prevent or correct the false statements and omissions.

93.     At all times, the Appraiser Defendants were aware or should have been aware of their roles in the securities fraud committed by Quan and Stewardship Advisers.

94.     As a direct and proximate result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

95.     By reason of the foregoing, Acorn, Escher, and the Appraiser Defendants aided and abetted Quan's and Stewardship Advisors' violations of the Connecticut Uniform Securities Act and are liable to Plaintiff and the other members of the Class for the substantial damages

which they suffered in connection with their purchase of Stewardship Fund securities during the Class Period.

**COUNT FIVE**
**Plaintiff and the Class v. Quan and Stewardship Advisors**

**Fraud**

96.  Paragraphs 1 through 95 of this Complaint are incorporated herein by reference.

97.  By reason of the foregoing, Quan and Stewardship Advisors are liable to plaintiff and the Class for common law fraud.

98.  Quan's and Stewardship Advisors' fraudulent acts were wanton and willful, and plaintiff and the Class are therefore entitled to punitive damages.

**COUNT SIX**
**Plaintiff and the Class v. Quan and Stewardship Advisors**

**Negligent Misrepresentation**

99.  Paragraphs 1 through 98 of this Complaint are incorporated herein by reference.

100.  In addition, by reason of the foregoing, the financial statements of the Stewardship Fund, monthly newsletters and individual account statements sent to the members of the Class, all of which were prepared for the guidance of plaintiff and the members of the Class contained material misrepresentations and omissions as to the value and nature of the Stewardship Fund's investments, as to the manner in which the Stewardship Fund was being operated, and as to the value of the capital account for plaintiff and each member of the Class.

101.  As a result of the foregoing, Plaintiff and the other members of the Class, continued to purchase, and retained their interests in the Stewardship Fund.

102.  Defendants did not exercise due care when making these representations and omissions.

103.     Plaintiff and the other members of the Class, as a result of their purchases and retention of their interests in the Stewardship Fund, and by reason of Defendants' false and negligent representations and omissions, have sustained damages in an amount yet to be determined, and to be proven at trial.

## COUNT SEVEN
### Derivative Claim on Behalf of Stewardship Fund v.
### Quan, Stewardship Advisors, Acorn, Zucker, Schaffer and ALVR

### Fraud

104.     Paragraphs 1 through 22, and 28 through 67 of this Complaint are incorporated herein by reference.

105.     By reason of the foregoing, Quan, Stewardship Advisors, Acorn and the Appraiser Defendants are also liable to the Stewardship Fund for damages as a result of their common law fraud upon the Stewardship Fund.

106.     The fraudulent acts of Quan, Stewardship Advisors, Acorn, Zucker, Schaffer and ALVR were wanton and willful, and the Stewardship Fund is therefore entitled to punitive damages as well.

## COUNT EIGHT
### Derivative Claim on Behalf of Stewardship Fund v.
### Quan, Stewardship Advisors and Escher

### Breach of Fiduciary Duty

107.     Paragraphs 1 through 22, 28 through 67, and 104 through 106 of this Complaint are incorporated herein by reference.

108.     Quan, as the Managing Member of Stewardship Advisors, and Stewardship Advisors, as the Managing Member of the Stewardship Fund, owed a fiduciary duty to the Stewardship Fund to use due care in the management of the Stewardship Fund's assets.

109.    Escher, as the Independent Manager of the Stewardship Fund, owed a fiduciary duty to the Stewardship Fund to use due care with respect to his oversight of transactions between Acorn and the Stewardship Fund.

110.    All of the Stewardship Fund's investments in the SCAF Petters investments, and the Esmerian and Vassal loans as described above were made through Acorn.

111.    Quan, Stewardship Advisors and Escher knew or should have known that the Stewardship Fund investments in the SCAF Petters investments were not prudent investments and created an unreasonable risk of loss to the Stewardship Fund, in that Acorn had not followed any procedures to assure that the SCAF Petters investments were supported by real assets and transactions.

112.    Quan, Stewardship Advisors and Escher also knew or should have known that the Stewardship Fund investments in the Esmerian and Vassal loans were not prudent investments and created an unreasonable risk of loss to the Stewardship Fund, in that, *inter alia,* the appraisals of the Esmerian and Vassal collateral by the Appraiser Defendants were not based on comparable sales or auction prices.

113.    Escher also breached his fiduciary duty as Independent Manager in that he knew that Acorn had not followed any procedures to assure that the SCAF Petters investments were supported by real assets and transactions not done so or he failed to determine whether Acorn had done so.

114.    Escher also breached his fiduciary duty as Independent Manager in that he knew that the Esmerian and Vassal loans were based on the so-called appraisals prepared by the Appraiser Defendants which were not based on comparable sales or auction prices.

115.    The foregoing conduct by Quan, Stewardship Advisors and Escher was a breach

of the fiduciary duties owed by them to the Stewardship Fund and caused damages to the

Stewardship Fund, the exact amount of which is not presently known.

## COUNT NINE
**Derivative Claim on Behalf of Stewardship Fund v.**
**Quan, Stewardship Advisors, Escher, Acorn, Zucker, Schaffer and ALVR**

### Negligence

116.    Paragraphs 1 through 22, 28 through 67, and 104 through 114 of this Complaint

are incorporated herein by reference.

117.    By reason of the foregoing, Quan, Stewardship Advisors, Escher, Acorn, Zucker,

Schaffer and ALVR are liable to the Stewardship Fund for their negligence in acting as described

herein, all of which negligent conduct has caused Stewardship Fund damages in an amount that

is not presently known.

## COUNT TEN
**Derivative Claim on Behalf of Stewardship Fund v.**
**Quan, Stewardship Advisors, Escher, Acorn, Zucker, Schaffer and ALVR**

### Unjust Enrichment

118.    Paragraphs 1 through 22, 28 through 67, and 104 through 117 of this Complaint

are incorporated herein by reference.

119.    Defendants Quan, Stewardship Advisors and Escher were paid by the

Stewardship Fund in connection with the failed and imprudent investments in the SCAF Petters

investments, the Esmerian and Vassal loans and other questionable investments as described

above.

120.    Defendant Acorn was paid by the Stewardship Fund in connection with the failed

and imprudent investments in the SCAF Petters investments, the Esmerian and Vassal loans, and

other questionable investments as described above.

121.    Defendants Zucker, Schaffer and ALVR were paid by Acorn and indirectly by the Stewardship Fund for the fraudulent or negligent appraisals of the Esmerian and Vassal collateral as described above.

122.    It is unjust and inequitable for the defendants to retain the payments that they received in connection with the SCAF Petters investments, the Esmerian and Vassal loans, and other questionable investments.

123.    Therefore, defendants Quan, Stewardship Advisors, Escher. Acorn, Zucker, Schaffer and ALVR should be compelled to account for and re-pay Stewardship Fund for the unjust enrichment received by them together with the earnings thereupon.

### COUNT ELEVEN
### Derivative Claim on Behalf of Stewardship Fund v.
### Quan, Stewardship Advisors, Escher, Acorn, Zucker, Schaffer and ALVR

### Breach of Contract

124.    Paragraphs 1 through 22, 28 through 67, and 104 through 123 of this Complaint are incorporated herein by reference.

125.    As a result of the complicity of each of these defendants in causing the Stewardship Fund to invest in the SCAF Petters investments, the Esmerian and Vassal loans and other questionable investments as described above, defendants Quan, Stewardship Advisors, Escher. Acorn, Zucker, Schaffer and ALVR have breached their contracts with Stewardship Fund and/or breached contracts of which Stewardship Fund is a third-party beneficiary.

126.    As a result of such breaches of contract, the Stewardship Fund has suffered damages, the amount of which is presently unknown.

WHEREFORE, plaintiff demands judgment against defendants as follows:

A.      On Counts One, Two, Three, Four, Five and Six on behalf of the Class and against the defendants named in each such Count, respectively, for the damages sustained by the Class, punitive damages where applicable, interest, costs and attorneys' fees;

B.      On Counts Seven, Eight, Nine, Ten and Eleven on behalf of the Stewardship Fund and against the defendants named in each such Count, respectively, for the damages sustained by the Stewardship Fund, punitive damages where applicable, interest, costs and attorneys' fees.

C.      For such other further relief as this Court shall deem just.

/s/ Patrick A. Klingman
James E. Miller (ct21560)
Patrick A. Klingman (ct17813)
Shepherd, Finkelman, Miller & Shah, LLP
65 Main Street
Chester, CT  06412
860-526-1100    (phone)
860-526-1120    (fax)
jmiller@sfmslaw.com
pklingman@sfmslaw.com

Scott R. Shepherd
Lawrence D. Berger
Shepherd, Finkelman, Miller & Shah, LLP
35 East State Street
Media, PA  19063
Attorneys for Plaintiffs
610-891-9880    (phone)
610-891-9883    (fax)
sshepherd@sfmslaw.com
lberger@sfmslaw.com

Attorneys for Plaintiff

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

Poptech, L.P. ("Plaintiff"), organized and existing under the laws of Delaware, by and through its sole general partner, certifies as follows:

1.      Plaintiff has reviewed the Complaint to which this Certification is attached and has authorized its filing. Plaintiff retains Shepherd, Finkelman, Miller & Shah, LLP ("Counsel") to seek its appointment as lead plaintiff and pursue this securities class action on its behalf and on behalf of the proposed class pursuant to the terms of the parties' Retainer Agreement.

2.      Plaintiff did not purchase or otherwise acquire the securities that are the subject of this action at the direction of Plaintiff's counsel or in order tp participate in this or any private action under the federal securities laws or other laws.

3.      Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.      All of Plaintiff's transactions in Stewardship Credit Arbitrage Fund during the proposed class period (between February 7, 2006 and October 7, 2008) are listed below:

| Date | Transaction | Amount | Investment Class |
|------|-------------|--------|------------------|
| 01/01/2005 | purchase | $1,500,000.00 | Class P |
| 05/01/2006 | conversion | | Class A |

5.      During the three years prior to the date of this Certification, Plaintiff has never served, nor sought to serve, as a representative party in a federal securities class action.

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond its pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

As a member of Poptech, LLC, the sole General Partner of Plaintiff, I am duly authorized to execute this Certification on behalf of Poptech, L.P. and declare under penalty of perjury that the foregoing is true and correct.

Executed this 17th day of June, 2010, at Tiburon, California.

On Behalf of Poptech, L.P.

Harvey L. Poppel

**Verification**

I declare under penalty of perjury that I am a Member of Poptech, LLC, which is the sole General Partner of plaintiff Poptech, L.P., that I am duly authorized to make this verification on behalf of plaintiff Poptech, L.P., and that the facts set forth in the foregoing Complaint are true to the best of my knowledge, information and belief.

Dated: _06/16/10_

Harvey L. Poppel