UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| POPTECH, L.P., ) | CIVIL ACTION NO.: |
|     Plaintiff, ) | 3:10-cv-00967 (MRK) |
| ) | |
| v. ) | |
| ) | |
| STEWARDSHIP INVESTMENT ) | |
| ADVISORS, LLC, et al., ) | |
|     Defendants. ) | OCTOBER 1, 2010 |

**MEMORANDUM OF LAW OF DEFENDANTS STEWARDSHIP
INVESTMENT ADVISORS, LLC AND MARLON QUAN IN OPPOSITION
TO MOTION OF THE "POPTECH GROUP" FOR APPOINTMENT AS
LEAD PLAINTFF AND TO APPROVE ITS SELECTION OF COUNSEL**

Defendants Stewardship Investment Advisors, LLC ("SIA") and Marlon Quan ("Quan") submit this memorandum in opposition to the Motion of The Poptech Group For Appointment As Lead Plaintiff and to Approve Its Selection of Counsel (Doc. #18). In particular, SIA and Quan submit that the press release that is attached as Exhibit A to the moving Declaration of Patrick A. Klingman, Esq. ("Klingman Decl."; Doc. #18, Ex. 2) fails on multiple grounds to satisfy the notice requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA").

**Nature of This Action**

The Complaint in this action was filed on June 18, 2010 (Doc.#1). The sole named plaintiff is Poptech, L.P. ("Poptech"), which is alleged to be a Delaware limited partnership. ¶6.[1] The Complaint concerns Poptech's investment in Stewardship Credit Arbitrage Fund, LLC (the "Fund"), a hedge fund. However, no claims for relief are asserted against the Fund.

---

[1] References to "¶__" are to paragraphs of the Complaint.

SIA, a Delaware limited liability company, is the Managing Member and investment manager of the Fund. Quan is the managing member of SIA and the chief executive officer of defendant Acorn Capital Group, LLC ("Acorn"). Another defendant, Gus E. Escher, III, was the "Independent Manager" of the Fund, responsible for evaluating transactions between Acorn and the Fund. ¶13.

The remaining defendants are Benjamin Zucker, Peter Schaffer and A La Vielle Russie, Inc. The Complaint refers to them collectively as "the Appraiser Defendants" based on their alleged role in valuing certain jewelry acquired through loans in which the Fund invested. ¶¶14-16, 18, 59-61.

The Complaint purports to assert two distinct sets of claims in 11 counts. In Counts One through Six, Poptech sues directly on its own behalf and on behalf of a putative class of investors who purchased Class P and Class A interests in the Fund between February 7, 2006 and October 7, 2008. Two of these direct claims are alleged to arise under federal law: a claim in Count One, against Quan and SIA, for violation of §10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), and a claim in Count Two, against Quan, under the "control person" provisions of §20(a) of the Exchange Act. The four remaining direct claims are predicated on state law. Of these, three are asserted against Quan and SIA: Count Three, for violation of the Connecticut Uniform Securities Act; Count Five, for common law fraud; and Count Six, for negligent misrepresentation.

The second set of claims, contained in Counts Seven through Eleven, are allegedly asserted by Poptech derivatively on behalf of the Fund. All of them are predicated on state law: Count Seven, for common law fraud, against Quan, SIA, Acorn and the "Appraiser Defendants"; Count Eight, for breach of fiduciary duty, against Quan, SIA and Escher; Count Nine, for

negligence, against all defendants; Count Ten, for unjust enrichment, against all defendants; and Count Eleven, for breach of contract, against all defendants.

The gravamen of the Complaint is that the Fund lost money through two types of investments: (1) notes issued by affiliates of Thomas Petters, who was subsequently convicted of operating a Ponzi scheme, and (2) loans to finance the purchase of jewelry whose value was allegedly assessed incorrectly by the Appraiser Defendants.  Acorn originated the Petters notes and the jewelry loans, which were then purchased by the Fund.[2]

### The Motion For Appointment Of Lead Plaintiffs

The instant motion is made not only by Poptech, but also by two individuals, William A. Meyer and Terence Isakov, who are not parties to this action.  The factual bases for the application of Messrs. Meyer and Isakov to serve as lead plaintiffs is a form "Certification Pursuant To Federal Securities Laws" (Klingman Decl. Ex. B).  Other than the dates of their purchase of Class A interests in the Fund, this form contains no information regarding the circumstances of their investments.  For example, it does not include any allegations as to their reliance on any misstatement or omission, an essential element of the federal securities and common law fraud claims asserted in the Complaint.  So, as a threshold matter, there appears to be no basis for the Court to make even a preliminary assessment of whether Mr. Meyer or Mr. Isakov can satisfy the typicality requirement of Rule 23.

---

[2]    The legal sufficiency of the Complaint is not at issue on the instant motion; SIA and Quan intend to make a separate motion to dismiss the Complaint.  Similarly, while a motion under the PSLRA for appointment of lead plaintiff requires the Court to make a preliminary determination as to the typicality and adequacy requirements of Fed.R.Civ.P. 23, the inquiry at this stage is "less stringent" than on a motion for class certification, and any appointment of lead plaintiffs does not prejudice defendants' ability to contest a later certification motion. *In re Deutsche Bank AG Securities Litigation*, 2009 WL 4277202 at *3 (S.D.N.Y. 2009); *see also Weinberg v. Atlas Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003).

The motion is supported by a memorandum of law which materially misdescribes the Complaint.  After defining, in its very first paragraph, Stewardship Credit Arbitrage Fund, LLC as "Stewardship" or the "Fund," the memorandum goes on to state at page 2 (first full paragraph):

> The Complaint commencing this action alleges, in addition to state law claims and *alternative* derivative claims on behalf of the Fund itself, violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. § § 78 (j)(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5) *against Stewardship*, as well as two of the other named Defendants:  Stewardship Investment Advisors, LLC ("Advisors"), a Delaware limited liability company and the Managing Member of the Fund, and Marlon Quan ("Quan") who, as Advisors' sole member, in turn directed and controlled the Fund.  Complaint, ¶¶7-8, 11-12. [Emphasis added]

Nothing in the Complaint qualifies the purported derivative claims as "alternative" in any sense.  On the face of the Complaint, Poptech purports to assert both direct claims on behalf of itself and a putative class, and derivative claims on behalf of the Fund, with equal emphasis on both types of claims.  As discussed below, there is a conflict inherent in the assertion of direct and derivative claims against the same defendants, as the Complaint here attempts to do.  However, that conflict is undisclosed in the notice to putative class members which is a prerequisite to appointment of lead counsel.  That conflict cannot be made to disappear, nor can the Complaint be amended, by belatedly labeling the derivative claims "alternative" (whatever that may mean) in the moving memorandum of law.

The memorandum's description of the Complaint also misstates that §10(b) and §20(a) claims are alleged "against Stewardship," as well as against SIA and Quan.  Although the Fund was the issuer of the Confidential Private Placement Memoranda which are referred to repeatedly in the Complaint, no claims whatsoever are asserted against the Fund.  *See* ¶7 ("No claims for damages are asserted herein against the Stewardship Fund.")  The §10(b) claim is

4

asserted only against Quan and SIA (Count One at Complaint, p. 21), and the §20(a) claim is asserted only against Quan (Count Two at Complaint, p. 24). As discussed below, Poptech's willingness to forego suing the Fund does not cure the conflict which arises from the assertion of both direct and derivative claims, but it is a significant fact that was omitted from the notice. That infirmity in the notice cannot be fixed by misstating, in the moving memorandum, which parties are being sued in this action.

These and other defects in the notice are addressed below. They warrant denial of the motion.[3]

## ARGUMENT

The PSLRA requires that, within 20 days from the filing of the complaint, "the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class--(I) of the pendency of the action, the claims asserted therein, and the purported class period." 15 U.S.C. §78u-4(a)(3)(A)(i)(I). The notice must also state that within 60 days thereafter, "any member of the purported class may move the court to serve as lead plaintiff." 15 U.S.C. §78u-4(a)(3)(A)(i)(II).

The required notice "must (1) be properly published; (2) advise members of the putative class of the relevant details of (a) the pendency of the action, (b) the claims asserted therein, and

---

[3] Defendants have standing to challenge the adequacy of a notice to the class under 15 U.S.C. §78u-4(a)(3)(A)(i). *In re Lucent Technologies, Inc., Securities Litigation*, 194 F.R.D. 137, 148 (D.N.J. 2000) ("[w]hile it is clear the PSLRA provides that a challenge to the adequacy of a presumptively 'most adequate plaintiff' shall be made 'only upon proof of a member of a purported class,' 15 U.S.C. §78u-4(a)(3)(iii)(II), such a limitation does not exclude a challenge by the defendants to the adequacy of the notice to the class"), citing *Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 579-80 (N.D.Cal. 1999); *see also King v. Livent, Inc.*, 36 F.Supp.2d 187, 190 (S.D.N.Y. 1999) (defendants have standing to oppose a motion for appointment as lead plaintiff under the PSLRA; *California Public Employees' Retirement System v. Chubb Corp.*, 127 F.Supp.2d 572, 575 n. 2 (D.N.J. 2001) ("defendants do have standing to object to the form of the notice published by the plaintiff after filing the complaint").

(c) the period of the action; and (3) inform putative class members that they have the right to move the district court to serve as lead plaintiff in the class action." *California Public Employees' Retirement System v. Chubb Corp.*, 127 F.Supp.2d 572, 576-77 (D.N.J. 2001), *quoting Burke v. Ruttenberg*, 102 F.Supp.2d 1280, 1310 (N.D.Ala. 2000); *see also Haung v. Acterna Corp.,* 220 F.R.D. 255, 257-58 (D.Md. 2004) ("Although the PSLRA gives little indication of how much detail is required in the notice, it is understood to require enough notice to inform the reader of the general nature of the claim and to provide an avenue for further inquiry."), *citing In re Lucent Technologies, Inc., Securities Litigation,* 194 F.R.D. 137, 147-148 (D.N.J. 2000).

The motion contends that these requirements were satisfied by a press release issued by Poptech's counsel on June 24, 2010 (Klingman Decl. Ex. A). For the reasons that follow, this press release fell well short of compliance with the PSLRA.

**I. The Press Release Does Not Describe All The Claims Asserted In The Complaint**

The requirements of the notice, and their purpose, were summarized as follows:

> In addition to providing information concerning the pendency of the class action, the claims of the action should be described, the class period should be set out, the misstatements or omissions alleged should be described together with release dates of such disclosure and, as well, the possibility of intra-class conflicts among potential class members who purchased the stock of the company at various intervals throughout the proposed period should be described. This information should be in detail sufficient to permit an interested class member to decide whether to seek appointment as lead plaintiff. If there are several misstatements or omissions which the complaint allege[s] affected the trading price of the security at issue, the differing effect of each such misstatement or omission should also be described in detail.

*In re Lucent Technologies, Inc., Securities Litigation*, 194 F.R.D. at 148, *citing Ravens v. Iftikar*, 174 F.R.D. 651, 671-75 (N.D.Cal.1997). The *Lucent* court held a notice of pendency substantively inadequate because, *inter alia*, "it advise[d] investors only of the facts that a class

action lawsuit against Lucent has been filed and that the lawsuit is on behalf of a class of persons who purchased the common stock of the company between 27 October 1999 and 6 January 2000"; it "state[d] only that the complaint alleges violations of Section 10(b) and Section 20(a) of the Exchange Act and Rule 10(b) promulgated under the Exchange Act"; and "it only generally refer[red] to 'a series of materially false and misleading statements' without detailing either the content or dates of such statements." *Id.* at 146-47 (footnotes and record citations omitted).

The press release here suffers from the same deficiencies as the notice in *Lucent*. The press release does not describe all the claims asserted in the Complaint or all the parties against whom claims are asserted. It specifically refers only to the §10(b) and §20(a) claims, asserted against SIA and Quan in Counts One and Two, "[a]mong other claims." These other claims, in Counts Three through Eleven of the Complaint, are not described anywhere in the press release. For this reason alone, the press release fails to comply with the notice requirements of 15 U.S.C. §78u-4(a)(3)(A)(i)(I). *Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 579 (N.D.Cal. 1999) ("description of the claims in the notice must be congruent with the claims as alleged in the pleadings"); *Burke v. Ruttenberg*, 102 F.Supp.2d at 1316 ("while the notice lists the sections of the Exchange Act upon which the class claims are founded and informs members of the putative class that the claims stem from misrepresentations made by directors and officers . . . there is no explanation of these claims").

The incomplete description of the claims is especially problematic here because the Complaint purports to include both direct claims on behalf of Poptech and other investors, and derivative claims on behalf of the Fund itself. Courts have recognized that the dual assertion of such claims presents a sufficient conflict to preclude class certification. *Brickman v. Tyco Toys,*

*Inc.*, 731 F.Supp. 101 (S.D.N.Y. 1990); *Koenig v. Benson*, 117 F.R.D. 330, 334-35 (E.D.N.Y. 1987).

The conflict is not ameliorated by the Complaint's failure to assert claims against the Fund.  Both the direct claims and the derivative claims target the same defendants, and therefore set up a potential conflict between Poptech and the putative class, on one hand, and the Fund, on the other, for recovery against these defendants.  However, Poptech's willingness to forego asserting any claims against the Fund is something that recipients of the press release reasonably may want to consider in deciding whether to participate in the action.  Yet that fact is omitted from the press release.

## II. The Press Release Does Not Describe The Alleged Misstatements or Omissions

The press release does not describe in sufficient detail all the misstatements or omissions alleged and the date(s) of disclosure.  In fact, it does not identify a single misstatement in detail.  This omission renders the press release substantively inadequate.  *Lucent*, 194 F.R.D. at 148; *Wenderhold,* 188 F.R.D. at 581 (finding a notice inadequate because it failed "to disclose the misstatements or omissions claimed and the periods when these misstatements or omissions affected the trading price of [the corporation]"); *Burke*, 102 F.Supp.2d at 1316 ("The notice does not list each alleged misrepresentation or generally describe those misrepresentations such that an interested investor might be able identify the misrepresentations.").

The failure to describe the misrepresentations in sufficient detail is particularly critical because Poptech is relying primarily on an alleged misstatement in a February 7, 2006 letter which invited Class P holders, like Poptech, to exchange their Class P interests for Class A interests by February 28, 2006. ¶¶43-44.  However, the alleged class includes investors -- including Messrs. Meyer and Isakov -- who never owned Class P interests and/or purchased their

Class A interests months after February 28, 2006.  For example, Mr. Isakov claims to have purchased on September 1, 2006, while Mr. Meyer says he purchased on June 1, 2007.  So, neither of them could have relied on anything in the February 7, 2006 letter.

### III.  The Press Release Does Not Facilitate Further Independent Inquiry

The press release does not provide class members with sufficient information to make further independent inquiry.  It does not identify the case caption or all the parties to the action.  The press release does not state the date the Complaint was filed and does not provide the address of the court.  It provides the web address and the telephone number of the law firm that filed the Complaint, but as of September 30, 2010, the website did not even mention this case or provide a link to the Complaint.[4]  *See Burke*, 102 F.Supp.2d at 1315 (notices of pendency held defective under §78u-4(a)(3)(A)(i) because, *inter alia*, they "d[id] not fully inform potential lead plaintiffs either of the names of the plaintiffs, the names of the defendants or style of the case"); *California Public Employees' Retirement System*, 127 F.Supp.2d at 579-80 (notice of pendency held "substantively inadequate" because, *inter alia*, it failed to disclose the caption of the case, docket number, judge, and court address and provided a website address that did not contain the complaint or a link to the complaint); *Lucent,* 194 F.R.D. at 147 ("the notice provides neither the caption of the case, nor the name of the plaintiffs, nor the name of the judge to whom the case was assigned, nor the address of the court").

The press release does identify the court and provides the case docket number and the judge's initials, but the information it fails to disclose renders it difficult for a class member to make further independent inquiry and essentially requires class members to contact Poptech's lawyers, contrary to the purposes of  the PSLRA notice requirement. *See Haung,* 220 F.R.D. at 258:

---

[4]    http://www.sfmslaw.com (visited on September 30, 2010)

As it is, the notice provided appears more likely intended to "accumulate members of the class rather than to inform." *See In re Lucent Tech.*, 194 F.R.D. at 147. The only way for the reader, or a member of the purported class, to learn more about the case or the legal requirements of a lead plaintiff is to contact counsel directly or through the establish[ed] hotline number or email listed at the bottom of the notice. The notice reserves for the attorney the ability to screen lead plaintiffs and discourage greater participation by activist investors. This is precisely what the PSLRA seeks to avoid.

The foregoing deficiencies in the press release, considered separately or cumulatively, render it substantively inadequate because it fails to provide sufficient information to enable class members to make an informed decision whether to seek lead plaintiff status. Consequently, the press release fails to satisfy the content requirements of 15 U.S.C. § 78u-4(a)(3)(A)(i).

## CONCLUSION

For the foregoing reasons, the motion should be denied.

DEFENDANTS, STEWARDSHIP INVESTMENT
ADVISORS AND MARLON QUAN


By: /s/ Francis H. Morrison III
Francis H. Morrison III (ct04200)
Denise V. Zamore (ct27549)
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, Connecticut 06103
Telephone (860) 275-8100
Facsimile (860) 275-8101
fhm@avhlaw.com
dvz@avhlaw.com

OF COUNSEL:

DAVID S. SMITH
Smith Campbell, LLP
110 Wall Street
New York, New York  10005
Telephone:  212-344-1500
Facsimile:   212-344-5585
Email:   dsmith@sc-llp.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 1, 2010, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

      /s/ Francis H. Morrison III
      Francis H. Morrison III