UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| POPTECH, L.P., | ) | |
| | ) | CIVIL ACTION NO.: |
| Plaintiff, | ) | 3:10-cv-00967 (MRK) |
| | ) | |
| v. | ) | |
| | ) | |
| STEWARDSHIP INVESTMENT | ) | |
| ADVISORS, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | MAY 2, 2011 |

**DEFENDANT PAUL SEIDENWAR'S
MEMORANDUM OF LAW IN SUPPORT
OF HIS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Defendant Paul Seidenwar ("Seidenwar") respectfully submits this memorandum in support of his motion, pursuant to Fed.R.Civ.P §§ 9(b), 12(b)(1), 12(b)(6) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), to dismiss the Second Amended Complaint ("SAC"). In addition to the arguments set forth below, Seidenwar adopts and incorporates by reference the arguments set forth in *Defendant Paul Seidenwar's Memorandum of Law in Support of His Motion to Dismiss the Amended Complaint,* filed February 14, 2011 ("Seidenwar Memo"), and *Defendant Paul Seidenwar's Reply Memorandum of Law in Further Support of His Motion to Dismiss the Amended Complaint,* filed April 8, 2011 ("Seidenwar Reply"), as well as the arguments for dismissal advanced by any other defendants, as applicable to Seidenwar.

**INTRODUCTION**

Plaintiff asserts claims against Seidenwar in the SAC filed April 26, 2011. The claims against Seidenwar appear in Counts II and IV of the SAC asserting that, during the

class period, Seidenwar was a controlling person of Stewardship Credit Arbitrage Fund, LLC (the "Fund"), Stewardship Investment Advisors, LLC ("SIA") and Acorn Capital Group, LLC ("Acorn") and an aider and abettor under Connecticut state law.

As set forth in the Seidenwar Memo and Seidenwar Reply, as well as the argument below, Count II must be dismissed because Plaintiff fails to state a claim in accordance with the standards set forth in Fed.R.Civ.P §§ 9(b), 12(b)(6) and the PSLRA. In order to satisfy these pleading standards with regard to an alleged violation of § 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), Plaintiff must plead three elements: (a) a primary violation by a controlled person; (b) that Seidenwar actually controlled a primary violator; and (c) Seidenwar's "culpable participation" in the primary violation. The SAC is woefully inadequate as to each of these elements.

Moreover, because Count II contains the sole federal claim against Seidenwar, Count IV should be dismissed for lack of subject matter jurisdiction. Count IV asserts a claim of aiding and abetting a violation of the Connecticut Uniform Securities Act.

## **PROCEDURAL HISTORY OF THIS CASE**

On December 13, 2010, Plaintiff filed an Amended Class Action Complaint that named Paul Seidenwar as a defendant. Seidenwar had not been named in the original complaint filed in this matter. On February 14, 2011, Seidenwar made a motion to dismiss that complaint. Plaintiff filed its opposition to that motion on March 22, 2011. Seidenwar's Reply was filed on April 8, 2011. The Court scheduled oral argument on the motion to dismiss for May 4, 2011.

On March 28, 2011, Plaintiff filed a Notice of Supplemental Developments and Request for Conference. In that notice, Plaintiff made the Court aware of a case that had

been filed by the United States Securities & Exchange Commission ("SEC") in the United States District Court for the District of Minnesota against Defendants Marlon Quan, Acorn Capital Group, LLC ("Acorn"), and Stewardship Investment Advisors, LLC ("SIA") alleging violations of the federal securities laws.  Certain of the documents filed in the SEC case were attached as exhibits to that notice.

Following a conference call with the Court and all parties in this and a related case, the Court granted Poptech leave to file a motion to further amend its complaint based upon information gleaned from the SEC action in Minnesota.  On April 25, 2011, Poptech filed its motion to amend attaching the proposed SAC as an exhibit.  After discussions with counsel for Poptech, Seidenwar has waived objection to the amendment of the complaint, but retained his right to renew his motion to dismiss the complaint.

## ARGUMENT

### I. THE NEW ALLEGATIONS SET FORTH IN THE SAC FAIL TO CURE THE DEFECTS SET FORTH PREVIOUSLY IN SEIDENWAR'S MEMO AND REPLY

We have previously briefed our argument concerning the requirements for sufficiently pleading control person liability and have argued that the allegations in the Amended Complaint failed to state a claim based upon those requirements.  We submit that the newly added allegations in the SAC also fail to state a claim of control person liability under §20(a) of the Securities Exchange Act of 1934.  We will address the new allegations from the standpoint of whether they establish a reasonable inference that

Seidenwar: 1) controlled any of the alleged primary violators; and, 2) was a culpable participant in any of the alleged primary violations.[1]

Initially, it is important to note that a number of the new allegations are based upon and reference specific documents that were included as exhibits in the Minnesota case, SEC v. Quan, et. al, 11-cv-723 (JRT-SER).  In several instances, the SAC allegations regarding Seidenwar either do not accurately represent the contents of a document or take statements out of context.   While the law requires the Court to take the factual allegations of the complaint as true for the purpose of considering a 12(b)(6) motion to dismiss, where the allegations purport to accurately restate the contents of a document, we submit that the Court should examine the document to determine whether plaintiff's counsel has a good faith basis for the allegation as set forth in the complaint.  Therefore, in discussing the new allegations, in some instances the document upon which the allegation purportedly is based is attached as an exhibit to this memorandum of law.

The new allegations can be categorized as relating to: 1) alleged deficiencies in due diligence and Seidenwar's knowledge thereof;  2) Seidenwar's knowledge concerning payment methods and delays in payments due from the PAC Funding/Petters loans;  3) Seidenwar's involvement in the restructuring of those loans; and, 4) Seidenwar's failure to disclose his knowledge of the aforementioned deficiencies, late payments and loan restructurings.  Conspicuously absent from the new allegations, as well as the prior allegations, are any factual allegations from which it can reasonably be inferred that Seidenwar exercised control over any other defendant or culpably

---

[1] We continue to assert that the complaint is not sufficient to state a claim with regard to any of the alleged primary violations, but do so by way of incorporating the arguments of the other defendants.  The law is clear that if no primary violation is adequately alleged, control person liability does not exist.  We will address herein the reasons why, even if the Court denies the motions to dismiss as to the primary violations, the SAC fails to make out control person liability with regard to the other two prongs of the well-established legal test.

4

participated in any of the investor communications that constitute the alleged primary violations.

As we have stated previously, according to all of the allegations in the SAC, Seidenwar was an employee of Acorn, which is alleged to be an entity engaged in asset based lending. It is further alleged that Acorn sold the loans it made to SCAF, an investment fund managed by SIA, the investment manager. The allegations, taken as a whole, lead to a strong inference that Quan, and Quan alone, controlled Acorn, SCAF and SIA. There is not a single factual allegation leading to any reasonable inference that Seidenwar exercised control over Quan, Acorn, SCAF or SIA. Moreover, there is not a single factual allegation that Seidenwar had any involvement in the investor communications issued by SCAF and SIA or any knowledge as to the contents of those investor communications. Furthermore, there are no factual allegations leading to a reasonable inference that Seidenwar, in his capacity as an employee of Acorn, had any responsibility for communications with, or any duty of disclosure to, any SCAF investor, including the plaintiff.

The SAC contains new allegations at ¶¶ 18 and 23 that Seidenwar is identified on loan documentation as a representative of, and contact person for, Putnam Green LLC and Livingston Acres, LLC and that, in addition to the titles of President and Chief Credit Officer of Acorn, he at some point prior to the class period, held the title of Managing Director. As we have previously argued, title alone is not sufficient to establish control. Plaintiff has not alleged any indicia of actual control against Seidenwar, such as ownership or contractual rights. There are no new factual allegations from which it can

reasonably be inferred that Seidenwar had actual power, control or influence over any of the other defendants or the transactions at issue.

Paragraph 74 of the SAC contains allegations that purportedly are based upon a November 28, 2005 email from Seidenwar to Quan with a copy to Bucci discussing the monitoring of the Petters/PAC loan facility.  The only "due diligence" referenced in the email is due diligence being conducted by DZ Bank of "Acorn/Stewardship."  See Exhibit A.  We submit that a full reading of the email leads to the reasonable inference that Seidenwar was informing Quan of DZ Bank's findings and was making suggestions concerning possible methods of improving the monitoring.  However, there is nothing in the email or any of the factual allegations in the SAC that leads to an inference that Seidenwar had the authority or power to control the monitoring processes of Acorn.  In fact, the email further supports the fact that Quan solely controlled Acorn in that Seidenwar is seeking Quan's agreement with the suggestions he makes in the email.   The email is clearly one of an employee reporting to his employer.

The remainder of the allegations in ¶ 74 of the SAC are based upon excerpts of Seidenwar's testimony that were used as exhibits in SEC v. Quan.  One of those allegations is that Seidenwar discussed the monitoring deficiencies with Quan on at least two or three occasions.  The last sentence in ¶ 74 misstates Seidenwar's testimony and takes it out of context.  See Exhibit B attached hereto, Seidenwar transcript at p. 86, line 19 through p. 87, line 10.  Even as stated in the SAC, the allegation has no bearing upon actual control of the alleged primary violators or culpable participation in the alleged primary violations.

Additionally, although this paragraph appears under the headings *"VI. THE CLASS PERIOD STATEMENTS AND MATERIAL OMISSIONS OF ADVISORS AND QUAN"* and *"A. THE STATEMENTS,"* there absolutely is no nexus between the allegations in this paragraph against Seidenwar and any alleged statements or material omissions of Advisors and Quan.  Despite the fact that the allegations in ¶ 74 of the SAC contain interjections of conclusory statements related to the contents of the PPMs, the email from Seidenwar and the Seidenwar testimony cited therein contain no reference to PPMs or any investor communications.

As with the Amended Complaint, the SAC continues to assert allegations against the defendants as a group without providing particularized allegations against Seidenwar.  For instance, in ¶ 111 the allegations are that defendants Acorn, Advisors, SCAF, Quan, Seidenwar and Bucci failed to disclose information to investors concerning delayed payments, a forbearance agreement between Acorn and PAC Funding or alleged roundtrip transactions.  Nowhere in the SAC are there any allegations that would lead to a reasonable inference that Seidenwar had any duty to disclose that information to the SCAF investors.  Moreover, there is not a single allegation that Seidenwar had any knowledge of the roundtrip transactions.  Indeed, the documentary evidence in the form of emails relating to the roundtrip transactions, show that only Quan and Petters entity employees were involved in those transactions.

The most that can be inferred concerning Seidenwar is that in his capacity as an employee of Acorn, he was aware of the status of the PAC Funding loans and was involved in attempts to restructure those loans to improve Acorn's ability to service the loans, collect on the loans and pay off the note holders.

Importantly, there is nothing in the SAC that leads to an inference that Seidenwar had any duty to disclose or any involvement with or knowledge of what disclosures were being made to investors in SCAF.  Any fiduciary duty of disclosure lay with SCAF and SIA, as the investment manager of SCAF.  Further, the allegations make clear that everything known to Seidenwar was also know to Quan, who was the managing member of SIA.

Paragraph 139 purports to contain allegations related to Seidenwar's culpable participation in "the fraud at issue."   However, all of the allegations contained in ¶ 139 address only Seidenwar's knowledge concerning the asset based lending business in which he was involved as an employee of Acorn.  "The fraud at issue" is the alleged statements and omissions in the private placement memoranda ("PPMs") given to investors by SIA and SCAF.   Once again, there is not a single allegation in this paragraph that implies any knowledge of or involvement with statements made to investors.

In order to show "culpable participation," Plaintiff must plead with particularity factual allegations that lead to a reasonable inference of, at a minimum, conscious misbehavior or recklessness on the part of the controlling person.  *See, Seidenwar Memo pp. 6 – 8.*  The new allegations in the SAC clearly do not contain any information from which it can be inferred that Seidenwar acted recklessly or with conscious misbehavior.  There is not a single allegation that leads to a reasonable inference that Seidenwar knew or should have known of any alleged fraud with regard to statements or omissions in the investor communications that constitute the alleged "fraud at issue."  Nor is there any allegation that Seidenwar participated in or facilitated in anyway any statements made to

8

investors.  Not only is there no culpable participation relating to investor communications, there is no participation whatsoever.

Paragraph 139 does contain a number of allegations that are not substantiated by the documents upon which they purportedly are based.  We already have discussed the November 28, 2005 email that is referenced in ¶ 139 (a).  In ¶ 139 (d), Plaintiff alleges that "Seidenwar also testified the he knew and understood that Retailers were not sending their payments to the Lockbox *in violation of the Initial Credit Agreement and related agreements between Acorn and PAC Funding."* (emphasis added).  In fact, while it is true that Seidenwar became aware at some point that payments to the Lockbox were coming directly from PAC Funding, he did not testify that he understood this to violate any agreements.  He did testify that he had seen this happen in other situations in his career and that the explanation from Petters about the retailers aggregating payments made sense and were reasonable and acceptable.  See Exhibit B, *Seidenwar SEC testimony pp. 83 – 85.*

Similarly, SAC ¶ 139 (f) and (g) restate and elaborate upon the out of context final statement in SAC ¶ 74 discussed at page 6 above.  We ask the court to compare these allegations with Seidenwar's actual testimony in Exhibit B, p. 86, line 19 through p. 87, line 10.  In that testimony excerpt, Seidenwar references the general financial crisis and that "the government almost went bankrupt letting the banks do whatever they did." Exhibit B, *Seidenwar SEC testimony p. 86, lines 21 – 22.*  He goes on with a general discussion indicating that in the asset based lending industry, for loans that are performing well, some monitoring procedures may not be followed.  He then returns to the general financial crisis stating, "… we're in the crisis we are today because yes, it's

9

really common." Exhibit B, *Seidenwar testimony p. 87, lines 7 – 8*. To which the SEC examiner asks, "[and] really dangerous?" and Seidenwar responds "[o]bviously." Exhibit B, *Seidenwar SEC testimony, p. 87, lines 9 – 10*. We note that in the SAC the phrase "really dangerous" spoken by an SEC attorney is translated into "extremely dangerous." Moreover, Seidenwar is discussing monitoring generally and is not referring to the Petters/PAC Funding relationship. In fact, during the same line of questioning, Seidenwar notes that Acorn had received over "[three] billion in collections [from Petters entities] … all on a timely basis… until … February '08." Exhibit B, *Seidenwar SEC testimony, p. 86, lines 8 – 12*.

We certainly understand that counsel for Plaintiff has a duty to zealously advocate for its client. However, it has an equal duty to include only allegations that are made in good faith. We submit that in this case, counsel in its desperate attempt to bring Seidenwar into this case, has taken substantial liberties in interpreting documents that speak for themselves. Notably, even were the Court to take the flawed allegations as stated in the SAC at face value, Plaintiff has failed to provide even a modicum of factual information that would lead to a reasonable inference of actual control or culpable participation of Seidenwar. At best, the allegations against Seidenwar, taken as whole, may be sufficient to plead negligence in the handling of the PAC Funding lending relationship by Seidenwar's employer, Acorn. Certainly, the SAC does not sufficiently plead control person liability for the alleged primary violations set forth in Count I of the SAC.

## II. COUNT IV MUST BE DISMISSED FOR LACK OF FEDERAL JURISDICTION

The sole basis set forth in the Amended Complaint for jurisdiction over the state law claims is supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Therefore, dismissal of the Count II federal claims under the Exchange Act warrants dismissal of the state law claims in Count IV. *Valencia ex rel. Franco v. Lee,* 316 F.3rd 299, 305 (2d Cir. 2003).

## CONCLUSION

The SAC must be dismissed as against Seidenwar. Further, given that this is Plaintiff's third attempt to draft an adequate Complaint, and the second with allegations against Seidenwar, we respectfully request that the Court dismiss the SAC against Seidenwar with prejudice.

```
                            DEFENDANT PAUL SEIDENWAR
                    By:     /s/ Abbe R. Tiger
                            Abbe R. Tiger  phv 04461
                            LAW OFFICE OF ABBE R. TIGER PLLC
                            40 Fulton Street, 23rd Floor
                            New York, NY 10010
                            Phone: 212-285-8000
                            Fax: 212-981-3309
                             abbe@abbetiger.com
```