UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| POPTECH, L.P., individually, and on behalf of a class of others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO.: 3:10-cv-00967 (MRK) |
| v. | ) ) ) | |
| STEWARDSHIP CREDIT ARBITRAGE FUND, LLC; STEWARDSHIP INVESTMENT ADVISORS, LLC; ACORN CAPITAL GROUP, LLC; MARLON QUAN; GUSTAVE ESCHER, III; PAUL SEIDENWAR; and ROBERT BUCCI, | ) ) ) ) ) ) | |
| Defendants. | ) | June 3, 2011 |

**ROBERT BUCCI'S MEMORANDUM OF LAW IN SUPPORT OF**
**HIS MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT**

This memorandum is respectfully submitted on behalf of defendant Robert Bucci in support of his motion, pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), 12(b)(6) and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 ("PSLRA"), to dismiss Counts II and IV of the Second Amended Class Action Complaint, dated May 2, 2011 (the "SAC"). For the reasons set forth in Bucci's briefs in support of his motion to dismiss the Amended Complaint[1] and as set forth below, plaintiffs' "control person" claim under section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a), and their aiding and abetting claim under the Connecticut Uniform Securities Act, Conn. Gen. Stat. § 36b-29, must be dismissed. Further, Bucci incorporates by reference the arguments made by Stewardship

---

[1] Bucci expressly incorporates by reference his February 14, 2011 Memorandum (Dkt # 70) and his Reply Memorandum, dated April 8, 2011 (Dkt # 81).

Investment Advisors, LLC and Marlon Quan in their May 23, 2011 in their memorandum in support of their motion to dismiss the SAC.[2]

## BACKGROUND

The Court is familiar with the background of this matter and has entered a Memorandum of Decision denying Paul Seidenwar's motion to dismiss the same counts that have been asserted against Bucci. *Poptech, L.P. v. Stewardship Credit Arbitrage Fund, LLC,* 2011 U.S. Dist. LEXIS 57400 (D. Conn. 2011)("Decision"). This memorandum will therefore focus on the differences in the allegations against these two defendants.

### I. The new allegations against Mr. Bucci.

Plaintiffs now allege that Mr. Bucci held positions in Acorn, the Fund and SIA;[3] (SAC ¶ 24); Bucci and others at Acorn helped create or review Powerpoints for some unspecified investor "presentations;" (SAC ¶ 36); and that he was a "cc" recipient of a single email in 2005 that allegedly put him on notice that Acorn's due diligence procedures were deficient; (SAC ¶¶ 50, 74). They also make the conclusory allegations that Bucci never disclosed the Petters default. (SAC ¶ 111). Plaintiffs also cite Quan's testimony to the SEC that Bucci did not take any action to confirm that Retailers "actually picked up merchandise." (SAC ¶ 117).

Plaintiffs also took the new tack of trying to bolster their conclusory allegations against Bucci by summarizing the claims that purport to satisfy the "culpable participation" element of their control person count. Paragraph 139 of the SAC has 19 subparagraphs. Fourteen of those allegations relate only to Seidenwar and Quan. The five related to Bucci do not constitute particularized allegations that he either recklessly or knowingly was involved in material

---

[2] Docket numbers 112, 113. SIA and Quan incorporate their earlier filings by reference in that brief.

[3] The Corporate Defendants are referred to by the following abbreviations: Stewardship Credit Arbitrage Fund, LLC ("Fund"), Stewardship Investment Advisors, LLC ("SIA") and Acorn Capital Group, LLC ("Acorn").

misrepresentations to the Fund's investors.  This imbalance reflects the fact that Bucci, unlike Seidenwar, was not generally involved in underwriting matters for the particular loans to Petters.

Plaintiffs made particular allegations as to Seidenwar's involvement with the Petters loans:  They assert, among other things, that Seidenwar (i) knew that retailers were not making direct payments to the Lockbox; (ii) knew that lax due diligence techniques were extremely dangerous; (iii) attended meetings in which PAC Funding's non-compliance with the Lockbox agreement was discussed; (iv) participated in the forebearance agreement; (v) along with Quan, but not Bucci, directed Miele's due diligence activities; (v) discussed with Quan that the transactions with PAC Funding fell outside of Acorn's guidelines; (vi) was involved in reviewing the ongoing defaults by PAC Funding; (vii) attempted to implement or enforce due diligence procedures; (viii) was involved in deciding to extend the PAL term loan; and (viii) was personally tracking Petters' level of default.  (SAC ¶ 139).

The SAC is plaintiffs' third crack at the apple.  Their first complaint did not name Bucci as a defendant.  The Amended Complaint named Bucci using a myriad of conclusory and inadequate allegations.  Then, when a trove of material was made public in the *SEC v. Quan,* Civil Action No. 11-723 (D. Minn.) matter, plaintiffs again amended the complaint by attempting to incorporate that material.  It is beyond peradventure that if there was *any* basis for plaintiffs to make the above-referenced charges against Bucci, in addition to Seidenwar, they would have.  The distinctions between the allegations against Bucci and Seidenwar are material and should compel a different outcome with respect to their motions to dismiss.

### II.  The Control Person claim against Bucci should be dismissed.

As this Court reiterated, liability under section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a), requires that a plaintiff show (1) a primary violation by the controlled person; (2) control of the primary violator by the defendant; and (3) the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud.  Decision[4] at 3.  For the reasons set forth below, plaintiffs have not established all of these elements.[5]

#### A.    Plaintiffs have not alleged a primary violation by the controlled person.

For the reasons s reasons explained in the Memorandum of SIA and Quan in support of their motion to dismiss the SAC, plaintiffs have failed to alleged a primary violation by Acorn, SIA or the Fund of the Securities Exchange Act of 1934.  15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5.  Bucci adopts and incorporates those arguments herein.  Bucci also adopts and incorporates the arguments that the case should be dismissed as the plaintiffs lack standing to assert direct claims.  Because SIA, the Fund and Acorn should not be held liable as primary violators, Bucci cannot be held secondarily liable as a control person.

#### B.    Bucci was not a culpable participant in a primary violation

The Court determined that to meet the culpable participation element of control person liability the plaintiffs must allege with the particularity required by the PSLRA that the defendant "participated in a fraud in some meaningful way, with a state of mind approaching recklessness." Decision at 11, 20.

---

[4] Page number citations to the Decision refer to the pagination as released by the Court through the Pacer system.

[5] Bucci does not concede that he had "actual control over the transaction in question," *In re Alstom SA Securities Litigation,* 406 F. Supp.2d 433, 487 (S.D.N.Y. 2005)(collecting authority), as is required to establish the element of "control."  However, Bucci contends that the motion to dismiss should be granted even assuming *arguendo,* that this prong is met based on the new allegations (SAC ¶ 24) and the Court's ruling regarding the applicable pleading standard.  Decision at 9-10.

In determining that plaintiffs met this pleading standard with respect to their claims against Seidenwar, the Court found that he was at least reckless "in failing to take steps to correct the information Mr. Quan was providing Stewardship Fund's investors." Decision at 21. The Court found that the SAC alleged that Seidenwar was a high-ranking officer at Acorn; Acorn at least initially approved communications to investors; and thereafter Acorn began passing the risk of its loans to the Fund's investors. Decision at 21-22. In this determination the Court also included Bucci's alleged role in some of its broad findings. However, Bucci is entitled to a separate examination as to whether the allegations against him meet the PSLRA specificity requirements.

As noted above, it is not alleged that Bucci was involved in the underwriting of the Petters loans. As described above with respect to paragraph 139 of the SAC, the allegations against Seidenwar with respect to his involvement with and knowledge of the Petters loans are much more specific and particular.

By contrast, the allegations relied on by the plaintiffs are insufficient to establish Bucci's culpable participation with respect to misrepresentations made in the investor communications. The fact that Bucci was a "cc" recipient of an email in November 2005 concerning due diligence procedures (SAC ¶ 139(a)) is hardly a particularized allegation that Bucci had knowledge that Acorn's due diligence was not in compliance with what the Fund's investors were being told. Indeed DZ Bank completed the transaction that was the subject of that email despite its "concerns." Moreover, as described in the briefs submitted by SIA and Quan, due diligence *was* being conducted. Plaintiffs do not allege that it was Bucci's responsibility to micromanage the due diligence and compare it to the investor disclosures.

It is also not a sufficiently particular allegation that Bucci had "control" over the lockbox. (SAC ¶ 139(b),(e)). While it is unclear what that allegation exactly means, it cannot be read to mean that Bucci understood that due diligence procedures were not in compliance with investor disclosures. For example, Bucci is alleged to have told Miele that PAC Funding could prepay a loan (SAC ¶ 100). It was true (and not even alleged to have been false) that PAC Funding *could* prepay a loan; and seeing that the loan was repaid, rather than going into default, was fully consistent with Bucci's job responsibilities.

It is also alleged that Bucci spoke at meetings with prospective investors and had some knowledge of the PPMs. (SAC ¶ 139(p), (r)). These allegations are much less specific than allegations in other cases that were found to be insufficient to plead culpable participation. In this regard, Bucci respectfully refers the Court to the discussion of *In re MBIA, Inc., Securities Litigation,* 700 F. Supp.2d 566 (S.D.N.Y 2010) in his February 14, 2011 Brief at 14-17. Indeed, numerous courts have found control person allegations against CFOs of public companies to be insufficient even though they allegedly knew of a fraud and signed SEC documents that contained alleged material misrepresentations and omissions. *See e.g., In re SLM Corp., Securities Litigation,* 740 F. Supp.2d 542, 560 (S.D.N.Y. 2010)(control person claims against CFO/CEO dismissed when plaintiffs cannot establish scienter; court noting that an allegation that a defendant ought to have known certain information is not sufficient to establish recklessness); *In re Take-Two Interactive Securities Litigation*, 551 F. Supp.2d 247, 304-05, 307-08 (S.D.N.Y. 2008) (CFO who signed SEC documents that allegedly contained false information regarding stock option backdating fraud did not act with knowledge or recklessness and therefore control person claims against him dismissed); *In re Refco, Inc. Securities Litigation*, *supra,* 503 F. Supp.2d 611, 642-44, 662-63 (S.D.N.Y. 2007)(former CFO not subject to control person liability

even though plaintiffs clearly alleged not only that he was reckless in failing to discover the fraud, but actually knew about it). *Cf., In re Fannie Mae 2008 Securities Litigation,* 742 F. Supp.2d 382 (S.D.N.Y 2010)(discussed in Bucci's April 8, 2011 Reply Brief).

Finally, the Court's view that Bucci was involved in a "secret" scheme is apparently based on the statements of confidential witnesses. (SAC ¶ 132). But, these allegations include mere speculation (for example) concerning the purpose of "closed door meetings" and other matters. One court recently discounted allegations from confidential witnesses because "[i]t is hard to see how information from anonymous sources could be deemed 'compelling' or how [the Court] could take account of plausible opposing inferences. Perhaps these confidential sources have axes to grind. Perhaps they are lying. Perhaps they don't even exist." *In re MRU Holdings Secs. Litig.*, 2011 U.S. Dist. LEXIS 15969 (S.D.N.Y. 2011)(*quoting Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 756-57 (7th Cir. 2007); *citing Tellabs*, *Inc. v, Makor Issues & Rights, Ltd.,* 551 U.S. 308, 314(2007)).

Taken as a whole the allegations against Bucci do not permit a reasonable inference that Bucci acted with the requisite knowledge or recklessness to be found a culpable participant in the alleged securities law violations. Because of his more limited role regarding the Petters loans (that plaintiffs acknowledge), the inference that Bucci was not responsible for harmonizing the due diligence activity with the Fund's investor communications, is cogent and more compelling than the opposing inference that the Court applied to Seidenwar's conduct. Decision at 20-21. Accordingly, Bucci respectfully maintains that the Court should find that the plaintiffs did not allege his culpable participation in the alleged fraud with the particularity required by the PSLRA and Count II should be dismissed.

**III. The CUSA count should be dismissed.**

For the reasons set forth in Bucci's February 14, 2011 and April 8, 2011 Briefs, the claim for adding and abetting a violation of the Connecticut Uniform Securities Act should also be dismissed.

## CONCLUSION

For the foregoing reasons, and for reasons set forth in Bucci's February 14, 2011 and April 8, 2011 Briefs, as well as the briefs filed by SIA, Acorn and the Fund, Bucci respectfully contends that his motion to dismiss Counts II and IV should be granted.

**Robert Bucci,**

By: \_\_\_/s/ Ian E. Bjorkman_____
Ian E. Bjorkman (ct11648)
Law Office of Ian E. Bjorkman, LLC
383 Orange Street
New Haven, CT 06511
Tel.: 203.773.9110
Fax: 203.516.2364
ian@ibjorkman.com

His Attorney

## **CERTIFICATION**

I hereby certify that on June 3, 2011 a copy of foregoing Memorandum in Support of Robert Bucci's Motion to Dismiss was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

      /s/ Ian E. Bjorkman_____
Ian E. Bjorkman